**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

RE/MAX, LLC,

      Plaintiff,

v.

ALEX MARTIN, L.L.C., and
ALEXANDRIA MARTIN,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff RE/MAX, LLC ("RE/MAX") for its Complaint against Defendants Alex Martin,

L.L.C. and Alexandria Martin ("Martin") (collectively referred to as "Defendants") alleges as

follows:

### Nature of the Action

In this action against the former franchise owner and operator of a terminated RE/MAX

real estate brokerage office in Port Orange, Florida, who continues to hold herself out as an

authorized RE/MAX franchisee, RE/MAX seeks injunctive and monetary relief for acts of

trademark counterfeiting, trademark infringement, and unfair competition under the Federal

Trademark Act, 15 U.S.C. § 1051 *et seq.*, and breach of contract under Colorado common law.

### The Parties

1.      RE/MAX is a Delaware limited liability company with its principal place of

business at 5075 South Syracuse Street, Denver, Colorado 80237.

2.      Upon information and belief, Alex Martin, L.L.C. is a Florida limited liability company with its principal place of business at 3813 South Nova Road, Suite 102, Port Orange, Florida 32127.

3.      According to the Florida Department of State records, Alexandria Martin, who was formerly affiliated with RE/MAX, is the registered agent and sole owner of Alex Martin, L.L.C., and can also be served at 300 S. Riverside Dr., Edgewater, Florida 32132.

## Jurisdiction and Venue

4.      This action arises under §§ 1114 and 1125(a) of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and Colorado common law.

5.      The Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367.

6.      This Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants agreed to this Court's personal jurisdiction over them in the Franchise Agreement, set forth in greater detail below, and because they have caused an injury to RE/MAX in this District.

## Background

7.      Throughout the United States, RE/MAX provides real estate brokerage services through a network of franchisees and affiliated independent contractor/sales associates who are authorized to use the RE/MAX trademarks in connection with providing real estate brokerage services (the "RE/MAX Network").

8.      Since at least as early as 1979, those affiliated with the RE/MAX Network have provided real estate brokerage services in interstate commerce in the United States in connection with the RE/MAX and REMAX word marks (the "RE/MAX word Marks") and in connection with a service mark consisting of a hot air balloon design (the "balloon design Marks").

2

RE/MAX owns U.S. Trademark Registration No. 1,139,014 for the RE/MAX word Mark and 1,173,586 for the balloon design Mark, among others.  Copies of the registration certificates for these marks are attached as **Exhibit A**.

9.      RE/MAX owns several additional U.S. trademark registrations for a family of marks that include the RE/MAX word Marks, the balloon design Marks, and the RE/MAX for sale sign design, including U.S. Trademark Registration Nos. 1,691,854; 1,720,592; 1,900,865; 1,902,982; 2,106,387; 2,119,607; 2,850,985; and 4,716,534, among others.  Copies of the registration certificates for these marks are attached as **Exhibit B**.

10.      With the exception of Registration No. 4,716,534, all of the above U.S. Trademark Registrations have achieved incontestability status under 15 U.S.C. § 1065.

11.      Since the 1970's, those affiliated with the RE/MAX Network have used the RE/MAX name in a stylized form distinguished by "REMAX" in all capital letters in red or blue, accented with a contrasting red or blue diagonal slash, as shown below:



12.      The federal registration rights and common law rights of RE/MAX in the marks described above are collectively referred to herein as the "RE/MAX Marks."

13.      The RE/MAX Marks are used on a variety of advertising media including listing signs, business cards, Internet web sites, directional signs, open house signs, hot and cold air balloons, television commercials, billboards, bus stop benches, banners and other advertising and promotional items.  A sample of RE/MAX signage featuring the RE/MAX Marks is set forth below:



14.     Since 1973, RE/MAX and the RE/MAX Network have invested billions of dollars to develop, promote, and maintain the RE/MAX Marks, among other marks owned by RE/MAX, in the United States and worldwide.

15.     Brokers and associates in the RE/MAX Network have used the RE/MAX Marks in connection with representing either the buyer or the seller more than 25 million times in real estate sales transactions in the United States and worldwide, resulting in over two and a half trillion dollars in sales volume from 1973 to the present.

16.     At any given time there are more than 300,000 RE/MAX property listings in the United States, almost all of which display prominently a listing sign similar to that set forth above.

17.     As a result of substantial sales and extensive advertising and promotion, the RE/MAX Marks have become widely and favorably known as identifying real estate brokerage services originating from, sponsored by, or associated with the RE/MAX Network.

18.     The public has come to associate the well-known and distinctive RE/MAX Marks with the RE/MAX Network as a source of high quality real estate brokerage services.

### The RE/MAX Emerald Group Franchise Agreement

19.     On January 19, 2011, Alex Martin, L.L.C. entered into a five-year franchise agreement with RE/MAX, d/b/a RE/MAX Florida Region, a RE/MAX regional sub-franchisor, to own and operate a RE/MAX real estate brokerage using the RE/MAX Marks under the trade

name RE/MAX Emerald Group (the "Franchise Agreement"), a copy of which is attached as

**Exhibit C**.

20.     Certain provisions of the Franchise Agreement expressly survive its termination

and remain enforceable, as discussed in more detail in Paragraph 27 below.

21.     The Franchise Agreement provides that if the franchisee is a limited liability

company, all owners of the franchisee also become parties to the Franchise Agreement.

22.     As shown by Exhibit A-4 to the Franchise Agreement, Martin was the sole owner

of Alex Martin, L.L.C. at the time of entry into the Franchise Agreement and is therefore a party

to the Franchise Agreement.

23.     On January 19, 2011, Martin entered into an agreement with RE/MAX Florida

Region under which Martin personally guaranteed full performance under the Franchise

Agreement and agreed to be personally bound by and liable for breach of the same (the

"Guaranty"), a copy of which is attached as **Exhibit D**.

24.     As part of the Guaranty, Martin agreed that her liability would not be diminished

or affected by a subsequent assignment, transfer, or termination of the Franchise Agreement.

25.     From approximately January 19, 2011 until March 31, 2015, RE/MAX Emerald

Group operated as a RE/MAX franchise in Port Orange, Florida, with Martin serving as manager

and broker.

26.     On March 31, 2015, RE/MAX terminated the Franchise Agreement due to

Defendants' failure to cure their significant delinquent account balances.

27.     The Franchise Agreement provides that, upon termination, Defendants must:

a.     immediately and clearly distinguish their operations from RE/MAX and

not hold themselves out to the public in any way as being or having been affiliated with

5

RE/MAX, including by immediately removing the RE/MAX Marks from the storefront and premises, and from all advertising, marketing, promotional, or other materials;

b.     immediately cancel all trade, fictitious, or assumed names that contain any reference to any RE/MAX Mark; and

c.     refrain from adopting or using in any manner, or for any purpose, the RE/MAX Marks, and any "for sale" sign, trade dress, or identity scheme comprised of lateral elements in red and blue separated by a white element, a design comprised of a three horizontal bar design, and from the use of a hot air balloon design or a hot air balloon symbol.

28.     In a termination letter dated April 1, 2015, pursuant to Paragraph 13.B of the Franchise Agreement, RE/MAX sent Martin a Notice of Termination of the Franchise Agreement for failure to cure delinquent account balances.

29.     At the time of termination, Defendants owed Continuing Franchise Fees, Advertising Fund Fees, and related late fees associated with each in the amount of $7,320.90.

30.     In the same letter, RE/MAX specifically reminded Defendants of their contractual obligations, as set forth above.

**Defendants' Breach of Contract, Acts of Infringement, and Unfair Competition**

31.     Upon information and belief, after RE/MAX Florida Region terminated the Franchise Agreement, Defendants have continued to offer real estate and brokerage services in Port Orange, Florida in connection with the RE/MAX Marks, including use of the RE/MAX Emerald Group d/b/a name and use of the RE/MAX Marks on various websites, including but not limited to, Angie's List, Facebook, Manta, Realtor.com, Homes.com, Trulia, Google+, Twitter, and LinkedIn.

32.     Upon information and belief, Defendants also continue to use the RE/MAX Marks on lawn signs and on storefront and premise signage, including as set forth below:





33.     Defendants' actions have caused, and will continue to cause, RE/MAX monetary

and other damages, at a minimum, in an amount to consist of reasonable franchise royalty

payments for the continued use of the RE/MAX brand and Marks since termination of the

Franchise Agreement, as well as additional damages caused to RE/MAX as a result of

Defendants' actions.

34.     Had the Franchise Agreement continued in force, in order to be entitled to use the

RE/MAX Marks following termination of the Franchise Agreement on March 31, 2015,

Defendants would have owed various fees set forth in the Franchise Agreement on an ongoing

basis, including Continuing Franchise Fees in the amount of $128 per month per Sales Associate,

plus the Broker Fee of 1% of Defendants' gross commission revenues, Advertising Fund Fees in

the amount of $125 per month per Sales Associate, and Annual Dues in the amount of $400 per

year (or $33.33 per month, pro rata) per Sales Associate.

35.     According to the Florida real estate commission records, Defendants currently have at least four agents or employees working for their real estate business, including Martin. Therefore, at a minimum, Defendants would owe fees for four agents in the amount of $286.33 per month, plus 1% of Defendants' revenue.

36.     Between termination of the Franchise Agreement and the date this Complaint was filed, Defendants' sales volume totaled $1,620,950.00.  Assuming a commission rate of 6%, of which the agent handling each side of the transaction would take half (3% for each agent), Defendants' gross commissions for the relevant period of time equal $48,628.50.  1% of that total equals $486.28.

37.     As a result, had the Franchise Agreement remained in force, Defendants would have owed a minimum of approximately $5,067.56 and counting in order to continue using the RE/MAX Marks.

38.     Pursuant to the Franchise Agreement, RE/MAX is further entitled to liquidated damages in the amount of $500 for each day following the date of termination, after passage of a 10-day period, during which Defendants failed to timely perform their obligations upon termination.  RE/MAX is also entitled to costs and expenses, including reasonable attorneys' fees, incurred as a result of enforcing the Franchise Agreement.

39.     Defendants' infringing use of the RE/MAX Marks began subsequent to RE/MAX's first use and registration of the RE/MAX Marks and, upon information and belief, Defendants will continue to commit these acts unless enjoined.

40.     Upon information and belief, Defendants' acts were knowingly, deliberately, and intentionally carried out in bad faith, or with a reckless disregard for, or with willful blindness to, RE/MAX's rights, for the purpose of causing confusion and/or trading on RE/MAX's reputation.

41.     Upon information and belief, Defendants have profited and continue to profit from their unlawful acts.

42.     The intentional nature of Defendants' unlawful acts renders this an exceptional case, thereby entitling RE/MAX to exemplary and/or punitive damages under 15 U.S.C. § 1117(a) and common law.

## COUNT I
## Trademark Counterfeiting Under Federal Law
## (15 U.S.C. § 1114)

43.     RE/MAX realleges the allegations contained in each of the paragraphs above.

44.     This is a claim for counterfeit use of RE/MAX's federally registered Marks as depicted in **Exhibits A** and **B**.

45.     Defendants have used in commerce spurious designations that are identical to, or substantially indistinguishable from, the RE/MAX Marks in connection with services covered by registrations for the RE/MAX Marks.

46.     Defendants have used these spurious designations knowing they are counterfeit in connection with the advertisement and promotion of their services.

47.     Defendants' use of the RE/MAX Marks to advertise and promote their real estate brokerage services was and is without the consent of RE/MAX.

48.     Defendants' conduct is likely to cause confusion, mistake, or deception as to the source or origin of their real estate services, or the affiliation, sponsorship, or other relationship between the parties in violation of 15 U.S.C. § 1114.

49.     Defendants' conduct also constitutes an attempt to trade on the goodwill that RE/MAX has developed in the RE/MAX Marks, all to the damage of RE/MAX.

50.     By their conduct, Defendants have caused RE/MAX irreparable harm, damage,

and injury, and will continue to do so unless restrained and enjoined by this Court from further

infringing the RE/MAX Marks.

51.     RE/MAX has no adequate remedy at law.

**COUNT II**
**Trademark Infringement Under Federal Law**
**(15 U.S.C. § 1114)**

52.     RE/MAX realleges the allegations contained in each of the paragraphs above.

53.     This is a claim for infringement of RE/MAX's federally registered Marks, as

depicted in **Exhibits A** and **B**.

54.     Defendants' conduct is likely to cause confusion, mistake, or deception as to the

source or origin of their real estate services, or the affiliation, sponsorship, or other relationship

between the parties in violation of 15 U.S.C. § 1114(1).

55.     Defendants' conduct also constitutes an attempt to trade on the goodwill that

RE/MAX has developed in the RE/MAX Marks, all to the damage of RE/MAX.

56.     By their conduct, Defendants have caused RE/MAX irreparable harm, damage,

and injury and will continue to do so unless restrained and enjoined by this Court from further

infringing the RE/MAX Marks.

57.     RE/MAX has no adequate remedy at law.

**COUNT III**
**Unfair Competition Under Federal Law**
**(15 U.S.C. § 1125(a))**

58.     RE/MAX realleges the allegations contained in each of the paragraphs above.

59.     This is a claim for unfair competition, arising from Defendants' unlawful acts,

including, without limitation, use of a false designation of origin which is likely to cause

confusion, mistake, or deception as to origin, sponsorship, or approval, in violation of

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

60.     Defendants' conduct constitutes an attempt to trade on the goodwill that RE/MAX

has developed in the RE/MAX Marks, all to the damage of RE/MAX.

61.     By their conduct, Defendants have caused RE/MAX irreparable harm, damage,

and injury and will continue to do so unless restrained and enjoined by this Court from further

infringing the RE/MAX Marks.

62.     RE/MAX has no adequate remedy at law.

**COUNT IV**
**Breach of Contract**
**(Colorado Common Law)**

63.     RE/MAX realleges the allegations contained in each of the paragraphs above.

64.     This is a claim for breach of the Franchise Agreement.

65.     The Franchise Agreement is valid and enforceable.

66.     Defendants willfully and materially breached the Franchise Agreement.

67.     RE/MAX has fully performed its obligations under the Franchise Agreement.

68.     Defendants' unlawful conduct has caused and, unless restrained, will continue to

cause damages and irreparable harm to RE/MAX.

69.     RE/MAX has no adequate remedy at law.

**Relief Sought**

WHEREFORE, RE/MAX requests that this Court:

A.      Grant preliminary and permanent injunctive relief enjoining Defendants and their

principals, agents, servants, employees, successors, and assigns and all those in privity, concert

or participation with them from:

11

i.      further breaching the Franchise Agreement, including, without limitation, by using the RE/MAX Marks, including but not limited to use on yard signs, premise and/or storefront signs, and online;

ii.      imitating, copying, duplicating, manufacturing, producing, circulating, or otherwise making any use of the RE/MAX Marks or any mark confusingly similar to the RE/MAX Marks;

iii.      using any unauthorized copy or colorable imitation of the RE/MAX Marks, or false designation of origin or description, in such fashion as is likely to relate or connect Defendants with RE/MAX or the RE/MAX Network or cause confusion;

iv.      using any false designation of origin or false description which can or is likely to lead the trade or public, or individual members thereof, to believe mistakenly that any service advertised, promoted, offered, or sold by Defendants is sponsored, endorsed, connected with, approved, or authorized by RE/MAX;

v.      causing likelihood of confusion or injury to RE/MAX's business reputation and to the distinctiveness of the RE/MAX Marks by unauthorized use of identical or confusingly similar marks;

vi.      registering or attempting to register or using in any way any Internet domain name incorporating any of the RE/MAX Marks, or any  mark confusingly similar to any of the RE/MAX Marks;

vii.      engaging in any other activity constituting unfair competition or infringement of the RE/MAX Marks or RE/MAX's rights in, or to use, or to exploit the same; and

viii.      assisting, aiding or abetting another person or business entity in engaging or performing any of the activities enumerated in paragraphs (i) – (vii) above.

B.      Find that Defendants are liable for the causes of action alleged against them in this Complaint.

C.      Find that Defendants have breached the Franchise Agreement, by, inter alia, failing to pay amounts due prior to termination, and failing to de-identify from the RE/MAX brand following termination.

D.      Grant an order requiring Defendants and their principals, agents, servants, employees, successors, and assigns of and all those in privity or concert with Defendants who receive actual notice of said order to deliver up, or at RE/MAX's election certify the destruction of, all signs, articles, promotional, advertising, and any other printed materials of any kind bearing the RE/MAX Marks, and any mark confusingly similar to the RE/MAX Marks.

E.      Find Defendants liable and award to RE/MAX monetary damages in an amount to be fixed by the Court in its discretion as just, including, but not limited to, statutory damages, including up to $2,000,000 for each mark counterfeited, and/or all liquidated and other damages for breach of the Franchise Agreement, and/or all of the Defendants' profits or gains of any kind resulting from Defendants' willful infringement and/or acts of unfair competition, any damages RE/MAX suffered as a result of Defendants' actions, said damages to be trebled pursuant to 15 U.S.C. § 1117(b), and RE/MAX's costs, exemplary damages, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(b) and the Franchise Agreement and, in view of the intentional nature of the acts complained of herein and the exceptional nature of this case pursuant to 15 U.S.C. § 1117(a) and applicable common law, state statute, and federal law.

F.      Although a reasonable royalty is generally insufficient, find that one reasonable measure of damages owed to RE/MAX by Defendants is a reasonable royalty, as determined by the amount of fees Defendants would owe RE/MAX for continued use of the RE/MAX Marks had the Franchise Agreement continued in force.

G.      Award RE/MAX pre- and post-judgment interest on any monetary award made

part of the judgment against Defendants; and

H.      Grant to RE/MAX such other and further relief as the Court may deem just,

proper, and equitable under the circumstances.

## **Jury Demand**

RE/MAX demands a trial by jury on all issues so triable.

Respectfully submitted August 13, 2015.


/s Nadya C. Davis_____
Nadya C. Davis, Co. Bar # 40348
Andrea Anderson, Co. Bar # 3651
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, CO 80302
Telephone:  (303) 473-2700
aanderson@hollandhart.com
ncdavis@hollandhart.com


7952670_1